ORRIN L. PLUM, APPELLANT, V. LOUIS J. SIEKMANN ET AL.,
APPELLEES.

280 N. W. 264

FILED JUNE 17, 1938. No. 30282.

*Bruckman & Dunmire,* for appellant.

*James D. Conway* and *Stiner, Boslaugh & Stiner, contra.*

Heard before GOSS, C. J., ROSE, DAY, CARTER and MESS-MORE, JJ., and LIGHTNER and SPEAR, District Judges.

LIGHTNER, District Judge.

This is a suit by Orrin L. Plum against Louis J. Siek-

mann, Waldorf H. Brach and John H. Lohmann upon the indorsement on two promissory notes, one of $2,500 and one of $1,500. Both of these notes were made by a Mr. and Mrs. Hoff to the Conservative Investment Company and the indorsement on each was the same, to wit, "Conservative Inv. Co. by J. H. Lohmann, Sec.," and both were also indorsed by John H. Lohmann personally. Plaintiff claims that the Conservative Investment Company is a business or Massachusetts trust; that the defendants Louis J. Siekmann, Waldorf H. Brach and John H. Lohmann were the trustees thereof; that the indorsement in the name of the trust bound the trustees personally for the payment of the notes in question. The defendants Siekmann and Brach set forth in their answer the trust agreement, which they claim exempts the trustees from personal liability, and they further claim that under the negotiable instruments law they are not liable because their names do not appear upon the instrument. Mr. Lohmann made no defense and judgment was entered against him. Jury was waived and on trial to the court judgment was for defendants, and plaintiff appeals.

In addition to his claim that the above indorsement bound the defendants, plaintiff claims that Lohmann, acting for and in behalf of all of said trustees at the time of the transaction with plaintiff, represented and stated to plaintiff that all of the trustees, including the defendants above named, were personally back of the indorsement and guaranteeing the debt evidenced by the note.

We do not believe that plaintiff can base any rights on the alleged representation by Mr. Lohmann that the defendants were personally back of the indorsement and guaranteeing the debt evidenced by the note. Mr. Plum testified that Lohmann said that they, Siekmann and Brach, would stand back of everything and the security was all right, and that Lohmann satisfied him that they, the other trustees, were personally liable for the note. Mr. Lohmann denied that he had made any such representation. Unless the trust agreement gave Mr. Lohmann authority to bind

the other trustees by the representations in question, no agency or authority was shown in Mr. Lohmann to bind his cotrustees by making such representations. See on this point *Uihlein v. Budd*, 252 Ill. App. 487, wherein action was brought on a note signed "The Vincent Trust by C. R. Vincent, Pres." Plaintiff, the holder of the note, sought to hold the trustees of the common-law trust, doing business under the above name, on agency principles, and also upon the ground that the trust was controlled by the defendants. The Illinois court said:

"The facts alleged in the declaration do not justify the conclusion of law that defendant Budd is personally liable. These facts do not show that Vincent in this matter was the agent of Budd. Vincent was the president of the trust. The declaration avers that he had authority to execute notes in the name of the trust. It is not averred that he had authority to execute notes in the name of his cotrustees. * * *

"It is of course true that a trustee who enters into a contract with third persons is himself personally liable unless the agreement expressly provides that the person with whom he contracts shall look to the funds of the estate exclusively. * * * Unless such limiting language appears in the contract, the word 'trustee' is held to be only *descriptio personæ,* but there is no averment here that the defendant Budd signed any agreement."

One trustee cannot be held personally liable on an obligation incurred by a cotrustee on behalf of the trust, in the absence of anything to show that the latter was authorized to act for the former. Thus, one trustee cannot be held liable on a debt incurred in the name of the trust, by a cotrustee, merely because the latter incurred the obligation in such a way as to render him personally liable.

Furthermore, the district court's finding for the defendants in this, a jury case, where the jury were waived, has the same binding effect as a jury verdict and possibly could be interpreted as a finding that such representation was not made by Lohmann.

Appellant states his further contentions in his reply brief

as follows: "We contend that John H. Lohmann was the agent of the defendants and other trustees of the common-law trust. That he had authority to bind them on these notes. That the name Conservative Investment Company is the trade-name of the defendants and other trustees, and, consequently, in view of the fact that there was no understanding that the indorsees of said notes were to look only to the trust property for payment, these defendants are personally liable."

The trust agreement pleaded by the defendants is too long to quote in full, nor would it serve any good purpose to do so. We will, therefore, quote or refer only to the parts relied upon by plaintiff. Both in the preamble and in the body of the trust agreement there are provisions that the name "Conservative Investment Company" is the collective name of the trustees. It is said in the preamble: "The trustees in their collective capacity shall be designated as Conservative Investment Company and under that name shall so far as practicable conduct all business and execute all instruments in writing and take the legal title of all property of said trust." And again in the body of the instrument: "The title Conservative Investment Company being merely intended as a convenient designation of the trustees above named and their successors in trust in their conservative capacity." There are other similar provisions. Plaintiff especially relies upon the part of the trust agreement which provides: "In every written order, contract or obligation which the trustees by themselves or any officers or agent, shall give or enter into, it shall be the duty of the trustees to refer to this declaration of trust and to stipulate that any such contract or obligation shall be subject to all the terms of this declaration of trust."

The general rule is: "The trustees of a business trust, having substantial control of the property and business of the trust and who consequently have the status of principals, as in the case of trustees generally, are personally responsible for any obligations growing out of transactions in relation to the business of the trust, unless they have

specifically contracted in the incurring of the debt that the trust estate alone shall be held responsible therefor, and this is so, even though the trust instrument expressly declares them exempt from personal liability." 65 C. J. 1104. Many cases are cited to sustain the text, among those we have examined being *Goldwater v. Oltman*, 210 Cal. 408, 292 Pac. 624, 71 A. L. R. 871; *Linn v. Houston*, 123 Kan. 409, 255 Pac. 1105; *McClaren v. Dawes Electric Sign & Mfg. Co.*, 86 Ind. App. 196, 156 N. E. 584. See, also, cases and notes in 31 A. L. R. 856; 35 A. L. R. 504; 46 A. L. R. 158; 58 A. L. R. 518; and 71 A. L. R. 890.

The decision of this case does not rest however upon the general rule with respect to business trusts, but upon an exception to the general rule arising out of provisions of the negotiable instruments law. The exception is stated in 65 C. J. 1106, as follows: "Where the negotiable instrument law provides that one signing an instrument, who adds words indicating that he is signing in a representative capacity, is not personally liable thereon if authorized, a trustee executing a note in the name of a trust in such a way as to indicate that it is the note of the trust is not personally liable thereon." The general rule is that the trustees of a common-law trust are not personally liable upon negotiable instruments executed or indorsed by or on behalf of the trust. *Hamilton v. Young*, 116 Kan. 128, 225 Pac. 1045, 35 A. L. R. 496; *Adams v. Swig*, 234 Mass. 584, 125 N. E. 857; *Nelson Co. v. Morton*, 106 Cal. App. 144, 288 Pac. 845; *Uihlein v. Budd*, 252 Ill. App. 487; *Bowen v. Farley*, 256 Mass. 19, 152 N. E. 69; *Gutelius v. Stanbon*, 39 Fed. (2d) 621; *Tebaldi Supply Co. v. Macmillan*, 198 N. E. (Mass.) 651. Generally, no one is liable on a negotiable instrument whose signature does not appear thereon. Comp. St. 1929, sec. 62-118; *Comstock v. Reed*, 127 Neb. 752, 256 N. W. 881; *Webster v. Wray*, 19 Neb. 558, 27 N. W. 644; *Lewis v. First Nat. Bank*, 1 Neb. (Unof.) 177, 95 N. W. 355; *Reeves v. Wilcox*, 35 Neb. 779, 53 N. W. 978; *Farrell v. Reed*, 46 Neb. 258, 64 N. W. 959; *Thornton v. Farmers & Merchants Nat. Bank*, 117 Neb. 355, 220 N. W. 598.

In *Reeves v. Wilcox, supra,* land was purchased by three persons, the title taken in one who alone signed the notes. It was held that the other two who were also interested in the land were not liable since they had not signed the notes. The case of *Farrell v. Reed, supra,* was also a land transaction where the note was signed by one alone. In that case the one signing the note added the word trustee to his name, but it was held that he alone was liable and that the others interested in the land transaction were not liable. It seems, therefore, that it is not enough to show a moral responsibility or that equity and good conscience require that others in addition to the person signing the instrument should be bound. If their names do not appear upon the instrument they are not bound, and the names of Siekmann and Brach do not appear upon this instrument.

Plaintiff claims that the defendants Siekmann and Brach are liable on one of the following theories, namely: First, that John H. Lohmann was the agent of the defendants and one of the trustees of the trust and had authority to bind them on these notes; second, that the name Conservative Investment Company is the trade-name of the defendants under section 62-118, Comp. St. 1929. There is no evidence whatever to sustain appellant's first contention. The trust agreement does not give Lohmann who actually made the indorsement any such authority. The evidence does not show a course of dealing from which authority to bind the other trustees personally could arise. Such claimed authority depends entirely upon the alleged representations by Lohmann to appellant when the notes were indorsed, but the statements or declarations of Lohmann in regard to the other trustees would not bind them unless he was authorized to make them or within his apparent authority to make, neither of which appears.

Let us now examine appellant's second contention to the effect that defendants are liable under section 62-118, Comp. St. 1929, which provides: "No person is liable on the instrument whose signature does not appear thereon except as herein otherwise expressly provided, but one who signs

in a trade or assumed name will be liable to the same extent as if he had signed in his own name." Is the name of a business or Massachusetts trust the trade or assumed name of the individual trustees of the trust? We do not believe that the point has ever been decided, although the same provision is in the negotiable instruments laws of other states. A trade-name is "the name or style under which a concern or firm does business.". Webster's New International Dictionary. "Trade-names are names which are used in trade to designate a particular business of certain individuals considered somewhat as an entity." *St. Louis Independent Packing Co. v. Houston,* 215 Fed. 553. See *Hartzler v. Goshen Churn & Ladder Co.,* 55 Ind. App. 455, 104 N. E. 34. "It is a matter of common observation that persons do business frequently under what is known as a 'trade-name,' adopted for the purpose of giving them an apparent standing in the business community." *Willey v. Crocker-Woolworth Nat. Bank,* 141 Cal. 508, 75 Pac. 106. "A business name, also sometimes called a trade-name or a commercial name, is that name under which a business is carried on, whatever it may be, whether a personal name, as is commonly the case, or not." *Shoemaker v. Ulmer,* 34 Pa. Co. Ct. Rep. 469.

Appellees cite on this phase of the case *General American Oil Co. v. Wagoner Oil & Gas Co.,* 118 Okla. 183, 247 Pac. 99. This was not a suit on a note, but a suit by plaintiff, a business or Massachusetts trust, on a contract, and one question was if it could maintain the action in its trust name. The court said: "The instrument creating and establishing such trust estate has generally provided a collective trade-name for the trustees in which they may make contracts and carry on the business of administration. This is a convenient expedient, which often avoids confusion and ambiguity as to the capacity in which such contracts are made, and the business in which said trustees are engaged. Such trade or firm name, when so used, may prevent misapprehension of third persons and of those dealing with the trustees by making plain that the trustees are really acting as such rather than for themselves individually."

Another case relied upon by appellees is *Hamilton v. Young*, 116 Kan. 128, 225 Pac. 1045, 35 A. L. R. 496, a suit against Charles and Young on an indorsement which read as follows: "The Victory Oil Company, By U. G. Charles, president. Attest: Fred C. Young, secretary." The Victory Oil Company was a Massachusetts trust. The Kansas court in that case held that Charles and Young were not liable personally because they signed as officers of the Victory Oil Company, basing their decision on a section of the Kansas negotiable instruments law which is identical with our own section 62-120, Comp. St. 1929, which reads as follows: "Where the instrument contains or the person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character without disclosing his principal does not exempt him from personal liability." The pertinent part of the decision is as follows: "On the face of the note, defendants are not liable. *Prima facie,* the name, 'The Victory Oil Company,' imports the name of a corporate body. * * * The signature is the signature of the corporation, affixed by its president and attested by its secretary, on its behalf. *Prima facie,* the execution was authorized. * * * Without the negotiable instruments law, nonliability of Charles and Young appeared on the face of the note, and by virtue of that law they are not liable."

See, also, *Adams v. Swig,* 234 Mass. 584, 125 N. E. 857, where the trustees of the National Realty Company, a Massachusetts trust, executed a negotiable promissory note in the following manner: "National Realty Company by Simon Swig, Edward L. McManus, Robert Luce, Louis Goldstein, trustees." The opinion of the Massachusetts court quoted the section of the negotiable instruments law above referred to and said: "In the case at bar, on its face the note purports to bear the signature of the National Realty Company by the defendants as trustees. Perforce

of the statute it follows that the defendants are not individually liable thereon if the National Realty Company existed and the defendants had authority to act for that company. * * * It follows that the note was signed in the name of a disclosed, existent principal."

The promissory note under consideration in *Nelson Co. v. Morton*, 106 Cal. App. 144, 288 Pac. 845, was signed "Trustees of Greater San Francisco Speedway Association (a trust) F. W. Pres. C. C. L. Sec." In *Bowen v. Farley*, 256 Mass. 19, 152 N. E. 69, the note was signed "Berry Real Estate Trust Trustees Owen F. Farley, Jr., for self and Co." In *Tebaldi Supply Co. v. Macmillan*, 198 N. E. (Mass.) 651, the note was signed "J. H. Realty Trust, John S. Macmillan Trustee." The note in *Gutelius v. Stanbon*, 39 Fed. (2d) 621, was signed "Harry Stanbon, William M. Nye, Walter H. Hill, Trustees of the Stanbon, Nye & Hill Realty Trust." It was held in all of the foregoing cases that there was no personal liability against the individual trustees.

The briefs of appellant indicate an exhaustive investigation of the authorities by counsel and yet they cite no case holding trustees personally liable on a negotiable instrument where the only signature was in behalf of the trust or as an officer of the trust, and we have made an independent investigation and have not found any such case. While the particular theory presented by appellant that the defendants are liable under section 62-118, Comp. St. 1929, on the ground that the trust name is the trade-name of the individual trustees has not been presented in any of such cases, this same section is, we believe, in all of the uniform negotiable instruments acts, and the reasoning of the cases above cited indicates that the name of the trust cannot be held under said acts or under said section to be the trade-name of the individual trustees.

The appellees contend that the fact that Lohmann signed the instrument personally and that some of the former notes of which the notes in suit are renewals were signed by Staley personally indicates that Siekmann and Brach

were not to be bound; that such course of dealing was the practical interpretation of the contract given to it by the parties themselves. Many cases are cited in support of the general rule which is well founded, but the only case cited involving a business trust is *Wm. Lindeke Land Co. v. Kalman*, 252 N. W. 650 (190 Minn. 601) where it was held: "Where three trustees of business trust leased property for eight-year term, signing lease 'as trustees,' and simultaneously therewith two of the trustees executed instrument, personally guaranteeing performance for first three years, whether trustee not signing guaranty was personally bound under lease *held* for jury." It seems to us also that at most this would present a jury question, but a holding on this proposition is not necessary since the authorities above cited require an affirmance of the case.

AFFIRMED.