**BOATMEN'S FIRST NATIONAL BANK OF KANSAS CITY, Plaintiff,**

v.

**Kenneth H. and Ruthanne C. KOGER, Defendants.**

**Civ. A. No. 91–2214–L.**

United States District Court,
D. Kansas.

Feb. 27, 1992.

Gordon E. Wells, Jr., Lathrop & Norquist, Overland Park, Kan., and Michael R. Roser, Lathrop & Norquist, Kansas City, Mo., for plaintiff.

Max Gordon and Ronald L. Kraft, Kraft, Brower and Gordon, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment dated September 30, 1991 (Doc. # 20). In its motion for summary judgment, plaintiff sought judgment against defendant Kenneth H. Koger on a note dated May 15, 1990 executed by Kenneth H. Koger in favor of the plaintiff in the principal amount of $460,500. Plaintiff also sought judgment against defendant Ruthanne C. Koger as a guarantor on the note arising out of four separate guarantee agreements executed by her. In response to plaintiff's motion for summary judgment, defendant Kenneth Koger admitted default on his note with plaintiff, and a journal entry of partial summary judgment was entered against him in the amount of $446,613.75 plus interest. However, defendant Ruthanne Koger was allowed by the Magistrate to amend her answer to assert a "Regulation B" defense to plaintiff's claim on her guarantees. For the reasons set forth below, plaintiff's motion for summary judgment against defendant Ruthanne Koger is granted.

Defendant Ruthanne Koger asserts that her guarantees of the note were obtained by plaintiff in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 et seq., and its implementing regulations, Regulation B, 12 C.F.R. § 202.1 et seq. The ECOA and Regulation B limit the circumstances under which a creditor may require the spouse of a debtor to guarantee the debtor's obligation to the creditor. Defendant Ruthanne Koger specifically alleges that plaintiff violated §§ 202.7(d)(1) and 202.7(d)(5) of Regulation B in obtaining her guarantees on the note. Ruthanne Koger therefore asserts that because the guarantees were obtained in violation of Regulation B of the ECOA, she is not liable for defendant Kenneth Koger's obligation to plaintiff.

There is little authority as to whether Regulation B can be asserted as an affirmative defense to payment of a debt. However, this question does not need to be decided in this case because Ruthanne Koger does not have proper standing, in any event, to assert a Regulation B violation as to two of the guarantee agreements which

predated mandatory applicability of the Regulation.

The ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). Earlier case law held that a guarantor had no standing as an "applicant" under the ECOA. *See, e.g., Morse v. Mutual Federal Savings and Loan Association,* 536 F.Supp. 1271 (D.Mass.1982). In response to that case law, Regulation B was amended to expand the definition of an applicant to include guarantors. *See* 12 C.F.R. § 202.2(e) and § 202.7(d). However, compliance with the revised Regulation B was not mandatory until October 1, 1986. Thus, prior to that date, a guarantor had no standing to assert a violation under the ECOA. *See Morse,* 536 F.Supp. at 1278; *see also Sam v. United States,* 230 Ct.Cl. 596, 682 F.2d 925 (1982) ("If [a] new regulation or interpretation overrules prior law or policy, the new regulation or interpretation will not ... be given retroactive application.").

The uncontroverted facts in the record establish that Ruthanne Koger executed four separate guarantee agreements guaranteeing the debt of Kenneth Koger. These guarantee agreements include an undated guarantee agreement executed in 1982 and guarantee agreements dated August 12, 1986, October 8, 1986, and January 31, 1990. By the terms of each of these guarantee agreements, Ruthanne Koger absolutely and unconditionally guaranteed any and all debts, obligations and liabilities of defendant Kenneth Koger to plaintiff then existing or thereafter created or arising. Additionally, the terms of each guarantee provided that the guarantees "shall continue in force with respect to all indebtedness of the Borrower until terminated as

to the undersigned upon receipt of written notice by the Bank from such undersigned."

The guarantees executed by Ruthanne Koger in 1982 and on August 12, 1986 were both executed prior to October 1, 1986, when the revised Regulation B took effect. Both guarantees covered all debts whether presently existing or thereafter arising. Additionally, both guarantees provided they would continue until terminated in writing by Ruthanne Koger. The plaintiff has produced uncontroverted evidence that neither of the guarantees has been terminated by Ruthanne Koger.[1] Because the revised Regulation B was not in effect when Ruthanne Koger executed the 1982 and August 12, 1986 guarantees, Ruthanne Koger does not have standing to challenge those guarantees under Regulation B. They are binding on her here.

Defendant Kenneth Koger has admitted that he has defaulted on the note to the plaintiff, and judgment has been entered against him in the amount of $446,613.75 plus interest. Defendant Ruthanne Koger has not challenged the amount of the debt. Therefore, pursuant to the 1982 and August 12, 1986 guarantees, defendant Ruthanne Koger is indebted to plaintiff in the same amount.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for summary judgment (Doc. # 20) is granted and that plaintiff, Boatmen's First National Bank of Kansas City, be and is hereby granted judgment against defendant, Ruthanne C. Koger, in the amount of $446,613.75 plus interest at the rate of $148.50 per day from and after May 24, 1991, for all of which let execution issue.

IT IS SO ORDERED.

---

**1.** She contends that the existence of a series of guarantees operates as an automatic termination of a prior guarantee when a new one is executed. She offers no authority for this contention as a matter of law and the guarantees themselves do not provide for termination of a prior guarantee upon execution of a new one.

The plaintiff offered no specific explanation why it had her sign a series of guarantees. The court does not find any inference from this set of facts, however, that would create a genuine issue of material fact regarding whether the prior guarantees had been terminated.